SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-14-164

| | |
|---|---|
| AARON WRIGHT<br>APPELLANT | **Opinion Delivered** September 10, 2014 |
| V. | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br>[NO. G108178] |
| CONWAY FREIGHT AND CONSTITUTION STATE SERVICES<br>APPELLEES | AFFIRMED ON APPEAL AND CROSS-APPEAL |

**ROBERT J. GLADWIN, Chief Judge**

Aaron Wright appeals the portion of the January 6, 2014 decision of the Arkansas Workers' Compensation Commission denying compensability for his back injury, arguing that the Commission's order was not supported by substantial evidence and that his due-process rights had been violated by the Commission's credibility determination. On cross-appeal, appellees Conway Freight, Inc. (Conway), the employer, and Constitution State Services, the insurance carrier, argue that appellant was not entitled to additional medical treatment for his knee. We affirm.

Appellant began working for Conway as a delivery driver in 2010. On March 2, 2011, appellant was attempting to move a pallet of freight weighing over four-thousand pounds to the back of his delivery truck when the pallet weight shifted, causing appellant's right knee to be pinned against the trailer. After a course of conservative treatment, Dr.

Darius Mitchell took appellant off work and performed right-knee surgery on September 23, 2011. When appellant was released by Dr. Mitchell to return to work on November 30, 2011, Conway fired him for reasons connected to a customer complaint prior to his injury.

In February 2012, Dr. Mitchell recommended that appellant see Dr. Khan, a chiropractor, for sciatica symptoms, stating in his examination of appellant on February 15, 2012:

> He has full range of motion in his knee. Stable to varus and vagus stressing. No effusion. No tenderness over his anterior middle or posterior medial and lateral joint line. I think at this point he has reached MMI. He is now having sciatica. I do not know if this is from an altered gait.

However, appellant was never treated by Dr. Khan. Dr. Richard B. Sharp evaluated appellant for maximum medical improvement and impairment rating and opined that appellant was at MMI on February 15, 2012, and should receive a four-percent impairment rating to the whole person or a ten-percent lower-extremity impairment rating.

Appellant went to work for FedEx Ground in March 2012. In response to an April 12, 2012 written inquiry from the claim representative then handling appellant's case, Dr. Mitchell checked "yes" to the question, "In your medical opinion would you say that Mr. Wright's sciatica pain resulted from the injury to his right knee?"

After Dr. Mitchell rendered his opinion, appellees referred appellant on May 4, 2012, to Ark-La-Tex Chiropractic for twelve visits. Dr. James Raker's office performed an intermittent course of chiropractic treatment, allowing for appellant's work schedule with FedEx. Dr. Raker also ordered an MRI and later an electro-diagnostic study. Appellees paid

for the MRI and the electro-diagnostic study, and initially pre-authorized an epidural steroid injection.

On July 26, 2012, August 9, 2012, and August 17, 2012, Dr. Raker informed appellant that he should not go to work and noted that appellant had been "put on temporary total disability." Dr. Raker's plan was to begin a course of three chiropractic treatments per week. Shortly thereafter, appellees advised Dr. Raker in writing on August 17, 2012, that any further treatment for appellant's low back would no longer be covered by workers' compensation based on the current diagnosis regarding his low back versus the reported compensable injury involving his right knee.

Appellant filed a workers' compensation claim on August 30, 2012, seeking benefits from August 10, 2012, until he obtained a release to return to work on or about September 22, 2012. Appellant also sought payment of a pharmacy bill for three prescriptions of Arthrotec, filled after appellees denied further liability. Appellees argued that appellant's complaints were the result of a preexisting condition or injury and not a work injury. They also argued that treatment was terminated after the electro-diagnostic study failed to show clear cut radiculopathy. Appellees contended that the opinions of Dr. Raker and Dr. Mitchell were not stated within a reasonable degree of medical certainty, that Dr. Raker had failed to indicate that appellant's symptoms were in the L5 dermatome or were consistent with the L5 nerve-root impingement allegedly indicated by EMG testing. Appellees claimed that it was not until appellant was released and determined to be at MMI for his knee that numbness became an issue, and by that time appellant was already working for a new employer.

SLIP OPINION

The administrative law judge (ALJ) issued his opinion on July 15, 2013, finding that appellant had proved by a preponderance of the credible evidence each of the requirements necessary to establish that he sustained an impingement injury to his right L5 nerve root in his low back on March 2, 2011. The ALJ relied heavily on the electro-diagnostic study performed on July 26, 2012, which documented evidence "of a mild right L5 proximal nerve root impingement with denervation noted in the posterior tibialis." The ALJ found that the abnormality with the right L5 nerve root was causally related to the pallet incident that occurred on March 2, 2011. Further, the ALJ held that appellant was entitled to temporary total disability from August 10, 2012, through September 21, 2012. Finally, the ALJ awarded appellant his request for repayment of the outstanding pharmacy bill and "appropriate future medical treatment including but not limited to a return to Dr. Raker to determine whether Mr. Wright is at maximum medical improvement, and if not, the proper course of future care for Mr. Wright's compensable back injury."

The Commission reversed the ALJ's decision by an opinion filed on January 6, 2014. The Commission found that appellant did not prove by a preponderance of the evidence that he sustained a compensable injury to his back, but that he was entitled to additional medical treatment for the compensable injury to his right knee. The Commission denied any temporary total-disability benefits after March 8, 2012. The opinion states,

> We have discussed at length the documentary evidence establishing that the claimant injured his right knee on March 2, 2011, and that the claimant did not injure his back on that date. Counsel for the claimant asserts on appeal that the Full Commission cannot "ignore" the administrative law judge's conclusion that the claimant was a credible witness. Nevertheless, the Full Commission notes that the claimant's testimony actually contradicts Dr. Raker's opinion that the claimant injured

4

SLIP OPINION

his back on March 2, 2011. The claimant testified that he did not suffer from any back pain on March 2, 2011, and that he did not inform the respondent-employer that he suffered from any back pain as a result of the March 2, 2011 compensable injury to the claimant's right knee. The claimant even adamantly denied informing a physical therapist on October 18, 2011, that he was suffering from lower back pain. The Full Commission has not ignored any portion of the claimant's testimony.

. . .

In the present matter, the Full Commission finds that the claimant proved by a preponderance of the evidence that he was entitled to additional medical treatment for the compensable injury to his right knee. The parties stipulated that the claimant sustained a compensable injury to his right knee on March 2, 2011. Dr. Mitchell performed surgery to the claimant's right knee on September 23, 2011. Dr. Mitchell reported on February 15, 2012, that the claimant was "having symptoms of sciatica radiating down the posterior aspect of his right knee." The evidence demonstrates that these symptoms of sciatica were causally related to the claimant's compensable right knee injury, not a back injury.

. . . The claimant proved that he was entitled to additional medical treatment for his compensable right knee injury, including physical therapy and Arthrotec prescribed by Dr. Mitchell. The claimant did not prove that epidural steroid injections were reasonably necessary in connection with the compensable right knee injury. The claimant did not prove that he re-entered a healing period for his compensable right knee injury at any time after the assignment of a permanent impairment rating on March 8, 2012. The claimant therefore did not prove he was entitled to any period of temporary total disability benefits after March 8, 2012.

This appeal and cross-appeal timely followed.

Arkansas Code Annotated section 11-9-704(b)(6)(A) (Repl. 2012) vests with the Commission the duty to review the evidence and if deemed advisable to hear the parties, their representatives, and witnesses. The statute further requires the Commission to determine, on the basis of the record as a whole, whether the party having the burden of proof on the issue has established it by a preponderance of the evidence. Ark. Code Ann. § 11-9-704(c)(2). Thus, in determining that the Commission's authority and duty to conduct a de novo review of the entire record, including issues of credibility, are constitutional, this

court stated in *Stiger v. State Line Tire Services*, 72 Ark. App. 250, 261, 35 S.W.3d 335, 342 (2000):

> When the Commission reviews a cold record, demeanor is merely one factor to be considered in credibility determinations. Numerous other factors must be included in the Commission's analysis of a case and reaching its decision, including the plausibility of the witness's testimony, the consistency of the witness's testimony with the other evidence and testimony, the interest of the witness in the outcome of the case, and the witness's bias, prejudice, or motives. The flexibility permitted the Commission adequately protects the claimant's right of due process of law.

Accordingly, when there are contradictions in the evidence, it is constitutionally within the Commission's exclusive province to reconcile the conflicting evidence and to determine the true facts. *Toia v. HTI Logistics*, 100 Ark. App. 314, 268 S.W.3d 334 (2007). In addition, the Commission is not required to believe the testimony of the claimant or other witnesses, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *Cottage Café, Inc. v. Collette*, 94 Ark. App. 72, 226 S.W.3d 27 (2006).

However, in *Kimbell v. Association of Rehab Industry & Business Companion Property & Casualty*, 366 Ark. 297, 235 S.W.3d 499 (2006), our supreme court footnoted the following:

> In the instant case, the ALJ found that Minor's testimony was not reliable. However, the Commission found credible Minor's testimony that he was not on the porch at the time of the fall. Kimbell does not raise the issue of whether the Commission erred by substituting its opinion regarding the credibility of the testimony for that of the ALJ, who was present at the hearing.
>
> Previously, we have expressed our willingness to address the issue of whether a constitutional violation may result when the Workers' Compensation Commission and a reviewing court are permitted to ignore the findings of an ALJ, the only adjudicator to see and hear the witnesses. *See Scarbrough v. Cherokee Enters.*, 306 Ark. 641, 816 S.W.2d 876 (1991) (*citing Webb v. Workers' Compensation Comm'n*, 292 Ark. 349, 733 S.W.2d 726 (1987) (Newbern, J., concurring), and *Hamby v. Everett*, 4 Ark.

App. 52, 55, 627 S.W.2d 266, 267 (1982) (Glaze, J., dissenting)). In *Scarbrough*, we did not address the constitutional question as it relates to credibility issues, because in that case, there was no disagreement among the ALJ and the Commission with respect to the credibility of witnesses. *See also Penter v. Baldwin Piano and Organ Co.*, 309 Ark. 487, 832 S.W.2d 215 (1992). Here, there is a disagreement among the ALJ and the Commission; however, we are again unable to reach the issue because Kimbell failed to raise the issue below. We take this opportunity to once again express our willingness to address this issue in the future.

*Kimbell* at 304 n.1, 235 S.W.3d at 504–05 n.1.

## I. *Due Process*

Appellant contends that he has made his record before the Commission, which addressed the issue in its opinion, and the issue is now squarely before this court—does the scope of review provided by statute violate appellant's due-process rights? He argues that the answer is "yes." He urges that the proper scope of review should be whether the ALJ's decision was supported by substantial evidence, giving deference to the ALJ's credibility and evidentiary weight conclusions. Appellant claims that this is a classic case of the Commission interjecting its own credibility and weight determinations completely contrary to that of the ALJ. Appellant cites *Kimbell*, *supra*, and the underlying cases from this court and the Arkansas Supreme Court that indicate willingness to determine the issue if presented properly and preserved. *Hamby v. Everett*, 4 Ark. App. 52, 627 S.W.2d 266 (1982) (Glaze, J., dissenting); *Webb v. Workers' Compensation Comm'n*, 292 Ark. 349, 733 S.W.2d 726 (1987) (Newburn, J., concurring); *Scarbrough v. Cherokee Enters.*, 306 Ark. 641, 816 S.W.2d 876 (1991) (issue not preserved).

Appellees argue that it is not necessary to watch witnesses speak to determine credibility. Appellees contend that this court gives de novo review on a regular basis, and

SLIP OPINION

credibility determinations are based on the record. Because appellant's testimony contains clear inconsistencies regarding the timing and nature of his injury, the Commission's reasoning is evident and correct. Appellees cite the line of cases where this court has upheld the Arkansas Workers' Compensation Act in the face of due-process challenges, *see e.g.*, *Sykes v. King Ready Mix, Inc.*, 2011 Ark. App. 271; *Rippe v. Delbert Hooten Logging*, 100 Ark. App. 227, 266 S.W.3d 217 (2007); *Long v. Wal-Mart Stores, Inc.*, 98 Ark. App. 70, 250 S.W.3d 263 (2007), and the appellate courts' history of recognizing the Commission's right to render judgment on the credibility of witnesses, *see, e.g.*, *Arbaugh v. AG Processing, Inc.*, 360 Ark. 491, 202 S.W.3d 519 (2005); *Horticare Landscape Mgmt. v. McDonald*, 80 Ark. App. 45, 89 S.W.3d 375 (2002); *Poulan Weed Eater v. Marshall*, 79 Ark. App. 129, 84 S.W.3d 878 (2002).

In regard to *Kimbell*, *supra*, and *Scarbrough*, *supra*, appellees argue that those cases do not support the argument that the Commission's de novo review should be universally rejected as a due-process violation. Rather, they hold that this court may look to the reasoning behind the Commission's rejection of the ALJ's credibility determination and ensure there was substantive evidence to support the same. As will be discussed below, substantial evidence supports the Commission's decision.

Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Patterson v. Ark. Dep't of Health*, 343 Ark. 255, 33 S.W.3d 151 (2000). When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Id.* The Commission is not required to believe the testimony of the claimant

8

SLIP OPINION

or any other witness, but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Id*. Thus, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony. *Arbaugh*, *supra*. As our law currently stands, the Commission hears workers' compensation claims de novo on the basis of the record before the ALJ pursuant to Ark. Code Ann. § 11-9-704(c)(2) (Repl. 2012), and this court has stated that we defer to the Commission's authority to disregard the testimony of any witness, even a claimant, as not credible. *See Bray v. Int'l Wire Grp.*, 95 Ark. App. 206, 235 S.W.3d 548 (2006). Accordingly, we find no violation of appellant's due-process rights.

## II. *Substantial Evidence*

Arkansas Code Annotated section 11–9–102(4)(A)(i) (Repl. 2012) provides as follows:

(A) "Compensable injury" means:
(i) An accidental injury causing internal or external physical harm to the body ... arising out of and in the course of employment and which requires medical services or results in disability or death. An injury is "accidental" only if it is caused by a specific incident and is identifiable by time and place of occurrence[.]

The claimant has the burden of proving by a preponderance of the evidence that he sustained a compensable injury. Ark. Code Ann. § 11-9-102(4)(E)(I) (Repl. 2012). Furthermore, "[a] compensable injury must be established by medical evidence supported by objective findings." Ark. Code Ann. § 11-9-102(4)(D).

If an injury is compensable, then every natural consequence of that injury is also compensable. *Martin Charcoal, Inc. v. Britt*, 102 Ark. App. 252, 284 S.W.3d 91 (2008) (citing *Air Compressor Equip. v. Sword*, 69 Ark. App. 162, 11 S.W.3d 1 (2000)). The basic test is

whether there is a causal connection between the two episodes. *Jeter v. B.R. McGinty Mech.*, 62 Ark. App. 53, 968 S.W.2d 645 (1998).

Appellant argues that he established by a preponderance of the credible evidence each of the requirements necessary to establish that he sustained an impingement injury to his right L5 nerve root in his low back on March 2, 2011. He contends that the specific incident occurred during the course of his employment, and that any injury he sustained in that incident occurred as a result of a specific incident, was identifiable in time and place of occurrence, and arose out of and occurred in the scope of his employment with Conway. He argues that the L5 nerve root impingement was established by medical evidence supported by objective medical findings. He contends that the electro-diagnostic study is the best objective medical finding supporting the impingement's existence. The study showed evidence "of a mild right L5 proximal nerve root impingement with denervation noted in the posterior tibialis." He further contends that he established that what was identified by the study was causally related to the pallet incident on March 2, 2011.

First, he cites Dr. Mitchell's indication on April 12, 2012, by checking "yes" to the question of whether appellant's sciatica pain resulted from the injury to his right leg. He also cites Dr. Raker's opinion of May 10, 2012, that appellant hurt his lower back during the injury on March 2, 2011. Dr. Raker further surmised that medical personnel ignored the back pain due to the greater leg pain, according to triage criteria. Appellant claims that, even though neither doctor uses the magic words "reasonable degree of medical certainty," both doctors' opinions are stated within a reasonable degree of medical certainty.

Second, he cites Dr. Kevin McCann's May 10, 2012 diagnoses of the altered sensation in appellant's right leg as being in the L5 determatome. Third, appellant argues that appellees offered no proof of a preexisting condition or injury. Fourth, appellant contends that he reported numbness and tingling while still employed by Conway on April 19, 2011, May 27, 2011, June 16, 2011, July 20, 2011, August 18, 2011, and September 16, 2011.

Fifth, a physical therapist diagnosed sciatica on October 18, 2011, long before Dr. Mitchell reported on February 15, 2012, that appellant "now" had symptoms of sciatica, and Dr. Mitchell opined that the sciatica was related to appellant's knee injury. Finally, notwithstanding appellees' suggestion that appellant's numbness and tingling would be associated with the knee because that was the only area struck in the incident, no physician, therapist, or other medical provider has ever attributed appellant's numbness and tingling to the derangement in his knee. Therefore, appellant argues that the credible evidence, taken together with the medical opinions and objective medical tests, establish that his low back injury was caused by the March 2, 2011 incident and is compensable.

Appellees contend that appellant does not use the proper standard of review, as he urges this court to weigh the evidence de novo. Instead, appellees note that the sole question is whether substantial evidence supports the Commission's finding. Appellees argue that substantive proof supports the Commission's determination.

Initially, appellees claim that the medical records contain no indicia of a back injury until many months after the work injury. The first mention was by a physical therapist on October 18, 2011, stating that appellant self-reported lower-back pain and sciatica.

11

However, during sworn testimony, appellant expressly denied reporting lower-back pain to the therapist. Between December 2011 through April 2012, appellant, who had been released to go back to work in November 2011 but was terminated for reasons unrelated to the claim, began mentioning back pain for first time. Thus, the elapsed time between injury and report of back pain was indicative of a lack of causal relationship between the two.

Next, each of the medical records relied on by appellant were addressed by the Commission and either rejected or noted that they were misinterpreted by appellant. Firstly, the physical therapist's note of appellant's complaints of low-back pain were refuted by appellant. Secondly, the Commission determined that Dr. Raker's opinion that the March 2, 2011 incident injured appellant's back was not supported by the probative evidence of record. The Commission noted that appellant's own testimony contradicted Dr. Raker's opinion. The Commission's determination on the weight to be given Dr. Raker's testimony is not subject to review. *Poulan, supra.* Thirdly, Dr. Mitchell's April 12, 2012 letter indicating "yes" to the question of whether appellant's sciatic pain resulted from the knee injury does not support appellant's claim that he has a back injury based on the March 2, 2011 incident. Appellees contend that because "sciatica" does not equate to a "back injury," the Commission was correct in noting that appellant's sciatica was not causally related to a back injury, but related to the sciatic nerve of the lower extremity.

Finally, appellees claim that the Commission determined that appellant's testimony was not consistent. Appellees point to appellant's inability to consistently describe his back pain at the hearing, and his inability to pinpoint when the pain began. Also, appellees point

to the editorial comments made in appellant's medical records regarding his performance being inconsistent with his pain complaints, his confession to being lazy, that he lacked motivation, and that he refused to comply with the therapists' recommended drills. Therefore, appellees contend that the Commission properly relied on the objective medical proof, which contained little indication of back pain or injury until many months after the accident.

When the Commission denies benefits because the claimant has failed to meet his burden of proof, the substantial-evidence standard of review requires that we affirm if the Commission's decision displays a substantial basis for the denial of relief. *Moore v. Ark. State Hwy. & Transp. Dep't*, 2013 Ark. App. 752. We view the evidence in the light most favorable to the Commission's decision and affirm if it is supported by substantial evidence. *Id*. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Rector v. Healthsouth*, 2014 Ark. App. 135. The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Williams v. Baldor Elec. Co.*, 2014 Ark. App. 62. We defer to the Commission's findings of credibility and the resolution of conflicting evidence. *Moore*, *supra*. Accordingly, we hold that substantial evidence supports the Commission's denial of benefits based on appellant's claim of a lower-back injury.

### III. *Cross-Appeal*

Appellees claim that there is no evidence that supports any need for additional treatment. Appellant's knee injury has been treated and he was given surgery and therapy. The additional treatment was related to Dr. Raker's findings. The Commission rejected his medical opinions as unreliable and considered that many of the 2012 findings were too distant in time to be related. As a result, appellees argue that reversal of treatment arising from those findings is warranted.

We disagree. As discussed above, substantial evidence supports the Commission's decision. The Commission found that the symptoms of sciatica resulting from the knee injury, as opposed to a back injury, and anything related to it should be covered as spelled out in the Commission's decision.

Affirmed on appeal and cross-appeal.

PITTMAN and WHITEAKER, JJ., agree.

*Moore, Giles & Matteson, LLP*, by: *Greg Giles*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *Guy Alton Wade*, for appellees.

SLIP OPINION