

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV–14–809

| | |
|---|---|
| WASTE MANAGEMENT and GALLAGHER BASSETT SERVICES, INC. | **Opinion Delivered:** March 4, 2015 |
| APPELLANTS | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [Nos. G205370 and G301083] |
| V. | |
| EDDIE COOK | |
| APPELLEE | AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellants appeal from the August 6, 2014 opinion of the Arkansas Workers' Compensation Commission (Commission) reversing the opinion of the administrative law judge (ALJ) by finding that appellee proved that he sustained a compensable injury to his back on February 2, 2013, was entitled to temporary-total-disability benefits, and was entitled to reasonably necessary medical treatment. On appeal, appellants' sole argument is that substantial evidence does not support the Commission's decision that appellee proved he sustained a compensable lower back injury. We affirm.

The pertinent facts in this case are as follows, as ascertained from testimony and exhibits submitted below. Appellee sustained a compensable injury to his lumbar spine on June 19, 2012. Appellants accepted the injury as compensable and paid for medical treatment with Dr. Steven Cathey, which included a laminectomy and discectomy at L5–S1 on the left on November 21, 2012. Dr. Cathey released appellee to return to work

without restrictions on January 21, 2013.[1] Dr. Cathey assigned appellee a ten percent permanent-partial-impairment rating, which appellants accepted. At a follow-up appointment on January 31, 2013, Dr. Cathey noted that appellee had returned to work, but "could only work a few days because of increasing pain in his lower back." Dr. Cathey signed a return to work slip on February 1, 2013, permitting appellee to return to work without restrictions on February 1, 2013. Appellee returned to work, but was not allowed to resume operating heavy machinery.

On February 2, 2013, appellee tripped on a wire, causing him to fall onto a bulldozer from which he rolled onto the ground onto his back. From that position, using his radio, appellee contacted his lead operator, Jermaine Thomas. Thomas found appellee lying on his back on the ground. Thomas helped appellee into the seat of the bulldozer. Appellee complained of an inability to breathe, but was able to catch his breath while sitting. Thomas offered to call an ambulance, but appellee declined, requesting more time to "see if [he was] okay or if something's wrong." Appellee went to work operating the bulldozer thereafter. Thomas returned to check on appellee periodically.

At some point, Thomas reported the incident to the operations manager, Daman Stanford, who had Thomas bring appellee to the office. Appellee made a written statement in which he noted that he "hit [his] chest" on the arms of the bulldozer's blade, which "[k]nocked the breath out of [him]—pain in chest." He made no mention of any back injury. The First Aid/Near Miss Report included a typed version of his written statement and listed the body part affected as the left chest; no secondary body part was

---

[1] On a return-to-work slip dated January 28, 2013, Dr. Cathey stated that appellee was to be off work until his reevaluation on January 31, 2013.

listed. Additionally, Thomas also made a written statement advising that appellee had told Thomas that appellee "was walking and tripped over a piece of wire and fell against the arm of the dozer where he hit his chest." Thomas's statement made no mention of appellee stating that he had injured his back. The First Report of Injury or Illness Form, dated February 2, 2013, listed the type of injury as "contusion/strain" and noted that appellee "sustained a contusion to chest wall and [lumbar] strain."[2] At Stanford's request, appellee went to Concentra for medical care on the same date.

The transcription of appellee's February 2, 2013 visit to Concentra listed his chief complaint as being his chest; however, it noted that appellee "also stated that his low [sic] back is hurting." The transcription stated that there was "[n]o direct blow to [appellee's] back" and that appellee stated that he rolled off the bulldozer "onto his back."[3] Appellee's assessment was for a chest wall contusion, a thoracic strain, and a lumbar strain. He was diagnosed with a chest wall contusion and a lumbar strain. The record notes that appellee was limited to sixty degrees of motion with pain in any direction. He was placed on modified duty.

On February 5, 2013, appellee returned to Concentra where his assessment was the same and it was noted that his degree of motion with pain now varied depending on the

---

[2] The actual report states that appellee suffered from a "lombard strain;" however, this appears to be a spelling error.

[3] Appellants contested this note at the hearing.

direction, but the degree had decreased.[4] Accordingly, the number and nature of the modifications on appellee's modified duty were reduced.

Appellee returned to Concentra on February 12, 2013. The transcription thereof states that appellee had stated that he was "approximately 50% better." It noted that appellee's "[l]ow back is sore, but pain and radicular symptoms are unchanged" from his previous injury and that appellee was "at his baseline for back pain."[5] At a February 15, 2013 visit to Concentra, appellee reported that his chest was feeling much improved overall, but that his chest wall was still sore. Appellee's objective pain rating was seven on a scale of one to ten, and his overall progress was as expected. A physician work activity status report from Concentra, dated February 26, 2013, showed that appellee's diagnoses remained contusion of the chest wall and lumbar strain. Appellee was released to regular duty.[6] At a March 5, 2013 visit to Concentra, appellee reported "increased leg pain with prolonged sitting at work yesterday" and stated he was working regular activity. His objective pain scale was five on a scale of one to ten with his overall progress being slower than expected. Appellee was referred to Dr. Cathey for his lumbar strain diagnosis, but the referral was denied by appellants.

---

[4] The transcription read: "Flexion: 60 degrees with pain, extension: 10 degrees with pain, rotation right: 30 degrees with pain, rotation left: 30 degrees with pain, side bending right: 30 degrees with pain and side bending left: 30 degrees with pain tenderness of both paraspinous muscles at the level of L4, L5 and S1."

[5] Appellants also contested this note at the hearing.

[6] An undated physician work activity status returned appellee to work on March 5, 2013, with the restrictions of no lifting over ten pounds and that he should be sitting 75% of the time.

SLIP OPINION

On March 8, 2013, appellants filed a Form AR-2 – Employer's Intent to Accept or Controvert Claim. In the "compensation" section, appellants listed "chest & lower back" as the body parts injured. However, in their statement of position, they stated that they had accepted a compensable injury to appellee's chest, but were "denying a lower back injury because of no new objective findings."

Following the denial of his referral to Dr. Cathey, appellee went to see his family doctor, Dr. Jack Fendley, on April 5, 2013. Dr. Fendley's subjective findings were that appellee was positive for back pain, noting that his discomfort was most prominent in the lower lumbar spine, radiating to the right buttock. Dr. Fendley's objective findings noted that appellee had pain with range of motion in his right upper lumbar, among other areas. Of pertinence was Dr. Fendley's assessment of appellee with right lumbar region pain. Dr. Fendley referred appellee to Dr. Cathey.

An MRI of appellee's lumbar spine on April 18, 2013, concluded the following:

1. Left laminectomy at L5–S1. A combination of left paracentral soft disc protrusion and enhancing granulation tissue exerts mass effect upon the left S1 nerve root displacing it posteriorly.

2. Mild to moderate severity spondylostenosis at L4–5. No soft disc component.

3. Please see above.

The MRI also showed that "[a] left paracentral soft disc protrusion with annular tear is present and granulation tissue is within the left lateral recess."

Appellee returned to see Dr. Fendley on April 23, 2014. Dr. Fendley's objective findings included "MUSCULOSKELETAL: gait: slowed; tender lumbar bilat. diffuse"



and an assessment of appellee as having low back pain. His records show that he again initiated a referral to Dr. Cathey.

> Dr. Cathey corresponded with Dr. Fendley on May 2, 2013, stating the following:

> Thanks for sending Eddie back for follow-up. As you recall, he was operated for a disc herniation at L5-S1 on the left back in November of last year. Unfortunately, the patient did not note much improvement. He was released to return to work back in January of this year but fell on February 2, 2013, and since then has had increased pain in, his lower back with radiation, this time, to his right leg. He has not worked since.

> His neurological examination continues to reflect an old S1 radiculopathy on the left (the asymptomatic side). There is, however, no sign of right-sided radiculopathy. Straight leg raising aggravates his lower back pain bilaterally at 90 degrees. A recent MRI scan of his lower back reflects some epidural fibrosis at L5-Sl on the left but without any significant recurrent disc herniation, spinal stenosis, etc.

> Jack, unfortunately, the patient is not a candidate for additional spinal surgery or other neurosurgical intervention. I am once again releasing him to return to work without restrictions.

No further communication was made between Drs. Cathey and Fendley.

> An initial evaluation from Dr. Wayne Bruffett on May 22, 2013, reflected the

following:

> HISTORY OF PRESENT ILLNESS:
> Mr. Cook has a history of surgery at L5- S1 on the left last February by Dr. Steve Cathey.[7] I think he got, some benefit by that. However, then he had a fall, and he is having severe pain in the right side of his back and hip and somewhat down his leg. He went back and saw Dr. Cathey, and Dr. Cathey apparently told him there was not much else he could do and that he would just have to live with it. Mr. Cook says this is a pain that he cannot just live with. He has tenderness over his hip as well.
>  . . .

---

[7] Appellee's surgery was actually in November 2012 and not February 2013 as erroneously stated in this record.



RADIOGRAPH REPORT
X-rays of his lumbar spine ordered, obtained and interpreted today reveal a subtle degenerative spondylolisthesis at L4–5. He has multilevel degenerative changes. There is evidence of prior surgery at L5–S1 on the left.

Dr. Bruffett's impression was spondylolisthesis with stenosis, lumbar spine; degenerative disc disease; and postlaminectomy syndrome. His plan included recommending a transforaminal injection at L4–5 on the left to appellee, leaving surgery as a last resort.

Dr. Bruffett reported on June 17, 2013:

Mr. Cook returns, and he did not get the injection because his insurance company would not pay for it until I had seen his MRI. When I last saw him, his MRI would not pull up on the disc. He got a new disc, and today we cannot get it pulled up either, because it does not have a viewer on it.

Nonetheless, I got some more history today from Mr. Cook. My prior note indicates that he had surgery by Dr. Cathey for left leg pain, and then he was able to go back to work. Then he had a fall.

After I got more information today, it seems to me that his initial problem was work-related, and Dr. Cathey operated on him, and he got a 10% impairment rating and went back to work and was doing fine.

Then he had a fall at work, and that resulted in his pain now in his right hip and right leg. This was a second work-related injury. Apparently, however, according to him, workers' compensation felt like this was related, I guess, to his original surgery. Mr. Cook feels like this is a new injury, and, based on his history and the fact that now he is hurting down his right leg, I would agree with him.

Dr. Bruffett's impression was that the injury was a work-related injury with right hip and leg pain and prior surgery at L5–S1 for another work-related injury before that.

Dr. Bruffett's chart note for June 26, 2013, reflected the following:

I reviewed the actual MRI films on Mr. Cook. He has a history of prior surgery at L5–S1 on the left. This was done by Dr. Steve Cathey, I believe. It looks like on this MRI there is evidence of recurrent disc herniation, but Mr. Cook is not symptomatic on the left side. He is symptomatic on the right side. This occurred after a fall at work. He has stenosis at L4–5 and a facet cyst on the right side. He has

lateral recess stenosis. I believe he is symptomatic from this now. Based on his history, I think this developed after his work injury.

Dr. Bruffett's impression was "Lumbar spinal stenosis." In his plan, Dr. Bruffett wrote, "I would say with a reasonable degree of medical certainty that Mr. Cook's pain in his right side is related to his injury at work, and that I suspect that it is manifest in the lateral recess stenosis noted on his MRI as L4–5 on the right." He recommended a transforaminal injection at L4–5 on the right if it could be approved.

On September 4, 2013, appellee was diagnosed with lumbar radiculopathy and lumbar disc disease by Dr. Carlos Roman, who then treated appellee with a transforaminal right L4–5 lumbar epidural steroid injection on the same date.

Dr. Bruffett's record for appellee's October 23, 2014 follow-up visit stated:

Mr. Cook obtained a transforaminal injection at L4–5. He was denied by his workers' compensation insurance and had to pay for this, I guess on his own. It has helped him dramatically. He says he has not felt this good in months.

. . .

I reviewed Mr. Cook's history again. This is a little complicated, in that he had a work injury and had surgery by Dr. Cathey. He has an impairment rating and so forth, and then he had another fall at work. He talked to me about this today. He was entering his work area, and it was very early in the morning. It was pitch black. There was a wire coming up out of the ground, and he hooked his leg on the wire and fell down. This resulted in pain in his right leg. This was a separate, new incident, by his description, and I certainly believe him.

The injection has certainly helped him. If his workers' compensation will ultimately support him, he probably has some degree of an impairment rating due for this second injury and stenosis. The fact that it was relieved by this injection, in my opinion, shows that it certainly was symptomatic, and he is doing better now.

Dr. Bruffett's impression was "lateral recess stenosis, facet cyst L4–5 on the right, with right leg sciatica, which is now better after injection and prior surgery by Dr. Steve Cathey on the left."

A pre-hearing order was filed on October 23, 2013, in which appellee contended, in pertinent part, that he was entitled to treatment as recommended by Dr. Bruffett and to temporary-total–disability (TTD) benefits. Appellants contended, in pertinent part, that all appropriate benefits had been and were being paid with regard to both appellee's June 19, 2012 and February 2, 2013 claims. A hearing was held on January 9, 2014.

In a written opinion filed on April 9, 2014, the ALJ found in pertinent part, that appellee (1) had not proven by a preponderance of the evidence that he sustained a new compensable injury to his lower back on February 2, 2013; (2) that the evidence preponderated that appellee's herniation at L5–S1 that Drs. Bruffett and Cathey found on the April 2013 MRI was a recurrence of appellee's June 18, 2012 injury, not an aggravation; (3) that appellee had not proven by a preponderance of the evidence that he is entitled to additional medical treatment of his back by Dr. Bruffett; and (4) that appellee had proven that he was entitled to TTD benefits from February 3, 2013, through February 25, 2013. Appellee appealed to the full Commission.

The Commission reversed the ALJ in an opinion filed August 6, 2014. The Commission found that appellee proved by a preponderance of the evidence that he sustained a new compensable injury to his lower back on February 2, 2013; was entitled to additional TTD benefits; and was entitled to reasonably necessary medical treatments.

This timely appeal followed.

When deciding any issue, administrative law judges and the Commission shall determine whether the party having the burden of proof on the issue has established it by a preponderance of the evidence.[8] We review the evidence in the light most favorable to the findings of the Commission, and we will affirm if those findings are supported by substantial evidence.[9] Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[10] The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision.[11] We defer to the Commission's findings of credibility and the resolution of conflicting evidence.[12] The Commission may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief.[13]

Appellants argue on appeal that substantial evidence does not support the Commission's decision that appellee proved he sustained a compensable lower back injury. Specifically, appellants argue that appellee did not mention back pain during his medical

---

[8] *Thompson v. Mountain Home Good Samaritan Village*, 2014 Ark. App. 493, at 7, 442 S.W.3d 873, 878 (citing Ark. Code Ann. § 11-9-705(a)(3) (Supp. 2011)).

[9] *Id.* (citing *Jordan v. Home Depot, Inc.*, 2013 Ark. App. 572, 430 S.W.3d 136).

[10] *Wright v. Conway Freight*, 2014 Ark. App. 451, 441 S.W.3d 45 (citing *Rector v. Healthsouth*, 2014 Ark. App. 135).

[11] *Id.* (citing *Williams v. Baldor Elec. Co.*, 2014 Ark. App. 62).

[12] *Id.* (citing *Moore v. Ark. State Highway & Transp. Dep't*, 2013 Ark. App. 752).

[13] *Thompson v. Mountain Home Good Samaritan Village*, 2014 Ark. App. 493, at 8, 442 S.W.3d 873, 879 (citing *Rheem Mfg., Inc. v. Bark*, 97 Ark. App. 224, 245 S.W.3d 716 (2006)).

treatment for his chest contusion for two months following the accident, failed to report a back injury to Thomas, made no mention of a back injury in his written statement of the incident on the day of the incident, and testified that he struck a pile of rocks when Thomas testified that there were no rocks. Additionally, appellants argue that Dr. Cathey found no sign of right leg radiculopathy and confirmed that appellee did not suffer a new injury. Accordingly, appellants argue that this evidence supports their contention that the Commission's decision should be reversed. We do not agree.

Appellants' entire argument asks this court to find appellee's testimony not credible, essentially, to believe the testimony of Thomas over appellee, and to believe the medical reports of Dr. Cathey over any medical evidence from any other doctor or medical service provider. The Commission detailed the numerous times that issues with appellee's back appeared in his medical records, including the date of the injury, and noted the presence of an annular tear in appellee's lumbar spine that was not present before the February 2013 date of injury. The Commission found that the above-referenced evidence corroborated Dr. Bruffett's opinion, which the Commission deemed to be entitled to "significant probative weight." It is the Commission's duty to make determinations of credibility, to weigh the evidence, and to resolve conflicts in medical testimony and evidence.[14] This court is foreclosed from determining the credibility and weight to be accorded to each

---

[14] *See Ball v. Wynne Pub. Schs.*, 2014 Ark. App. 313, at 9, 436 S.W.3d 158, 163.

witness's testimony.[15] Accordingly, we hold that substantial evidence supported the Commission's decision; therefore, we affirm it.

Affirmed.

GLADWIN, C.J., and KINARD, J., agree.

*Worley, Wood & Parrish, P.A.*, by: *Melissa Wood*, for appellants.

*Laura Beth York*, for appellee.

---

[15] *Wright v. Conway Freight*, 2014 Ark. App. 451, at 9, 441 S.W.3d 45, 51 (citing *Arbaugh v. AG Processing, Inc.*, 360 Ark. 491, 202 S.W.3d 519 (2005)).